May it please the Court, Thomas Macris, Pillsbury-Winthrop Council for Petitioner, Miguel Andres López-Juan actually Miguel Andres Juan is the correct name, but López was added on his entry into the country. Your Honors, I believe the issue, the core initial issue in this case is the question of whether the substantial evidence compels the conclusion that Mr. López-Juan suffered persecution during the time that he was in Guatemala in 1982. What was the persecution? What was the nature of the persecution? The nature of the persecution was that he was under imminent threat of death, that he was forced to flee his home to live the rest of his life in foreign countries, most of it in refugee camps in Mexico. Now what was the source of the imminent threat of death? The source of the imminent threat of death was the Guatemalan Army. The Guatemalan Army had come to the town of Coya, had massacred hundreds of people there for no better reason than that they happened to be Mayan, a classic case of genocide. The Guatemalan Army continued to rampage through the area and at the point where Mr. Juan left, the Army was just a few kilometers away from his home. What's the proof in the record that the reason for the killings was the Mayan ancestry? Well, obviously there is no proof in the record of testimony of the soldiers involved in that massacre as to why they were there. How about anyone else as to the reason? Did Mr. Lopez Juan testify that the killings were because the residents were Mayan? The report of the Commission on Historic Clarification on the record at 399 through 341, talks, discusses... 399 through what? Through 341. Excuse me, 339, my apologies. Discusses the conclusion that the Guatemalan Army's activities with respect to the indigenous population amounted to genocide. That there was just mass killing of Mayans for no greater reason than that they were Mayans. Okay, so I can tell you there is no particularized evidence in this case where I can point to and say, yes, the massacre in Coya was because these individuals were Mayan. There's no testimony to that effect and I'm not going to tell you there is. But I think to conclude that there is any other reason for the Army to have been there killing women and children is a conclusion that no reasonable person could reach. You've been arguing this, I think from the standpoint that the BIA found there was no past persecution. That's correct. And the question is whether substantial evidence supports that finding. Is that correct? That's correct. That's correct. And I believe it does not. This is a case. The BIA actually did not reach the issue of whether persecution was on account of his race because they simply concluded there was no past persecution. They pointed simply to the fact that they said that although some of his relatives had been killed and although he had been forced to leave his home at various times, had had guerrillas in his home at various times, there was no evidence that anything that happened to Mr. Juan amounted to persecution. I submit that that's simply not correct. That an individual who was sitting there in the only home he has known his entire life listening to massacre based on race of the people down the road, hearing, having the refugees come through his house asking for shelter because the people in the village are being massacred, who then knows that the army is coming down the road, and as a result of that decides to leave the only home he has ever known, take his wife, travel by night hundreds of miles, dozens of miles, probably not hundreds, my geography may be a little exaggerated there, to reach Mexico where he then spends the rest of his adult life in a refugee camp. Counsel, let me ask you this. You said that the EIA never reached the issue of whether or not the persecution was based on one of the protected grounds because they found no persecution, but isn't that part of the definition of persecution, that it's based on a statutory protected ground under our case law such as NAVIS? That's part of what it takes to reach the conclusion that the past persecution is not such as to justify asylum, but in terms of their factual analysis, the BIA only discusses the question of whether or not what happened to Mr. Juan rises to the level of persecution, not the question of whether or not it was on account of his race. Counsel, doesn't our case law say that general civil war unrest does not rise to the level of persecution? This is not a case of general civil war unrest. This is a case of genocide perpetrated by the government. And what's your best case authority to support your argument in this case? What case are you relying upon to support your argument? Well, there are a number of... What's your best one? Best case I suppose is probably the discussion in COTAS versus INS 31F 3rd 847. Okay, and what language are you relying upon in COTAS? Their discussion of the, and it's cited on page 4 of the reply brief, Germany conclusively demonstrates persecution of the entire group can render proof of individualized targeting entirely superfluous. And that's what we have here. But I thought you had a case that talked about when there's an army that goes through and there's widespread killings on the part of the army. That's the scenario you've painted for us. And I'm asking you, do you have a case that backs up your argument based on the facts that you are articulating to us? I cannot point you to a case that is decided on that basis now. This is not a situation where the Guatemalan army imposed progressive discipline on people of Mayan heritage. They didn't come in and say, well, first you get a beating, then you get a detention, then your wife gets raped. They came through these towns and just simply massacred people because they were Mayan. Mr. Juan is here because he was fortunate enough to escape before that happened to him. I believe that in a civilized society to not view that, to not view having lost the entirety of your life as you knew it because of your fleeing from a genocide has to constitute persecution. I'm going to reserve the remainder of my time. That's fine. We'll hear from the government. May it please the Court, Jennifer Keeney for the government. This petition for review should be dismissed, Your Honors, because there is substantial evidence in the record to support the Board's finding that Petitioner failed to establish that he had suffered past persecution. The Petitioner pointed to COTAS, and in that case they were dealing particularly with well-founded fear of future persecution and whether there was a showing of generalized harm towards people similarly situated. In this particular case, Petitioner testified that he was never the target of anything on account of a particular ground. But, counsel, what about opposing counsel's argument that the IJ never reached that issue of particular ground because they found no persecution at all, because he found no persecution at all? I agree more with what you were saying, which is that on account of is part of the analysis to determine whether there was past persecution. You have to show that you were targeted for particularly a statutory protected ground, not merely for some generalized harm that may come to you. Well, but there are cases that make a, you know, differentiated analysis on whether or not particular conduct amounts to persecution, right? I agree, and I think in this — It's not whether or not it's on account of a protected ground. Well, I think in this case we can cover it in both ways. There wasn't past persecution. What occurred to Petitioner did not rise to the level of past persecution. Further, I would assert that it was not on account of if he has failed to demonstrate or point to substantial evidence which would support that it was on account of a statutorily protected ground. If we were to — if we were to believe — I've forgotten the name of this commission. You know, it's in the record here, the Findings of the Commission. The High Commission. The — whatever it's called. The Commission for Historical Clarification, right? And they're finding that there was genocide here against Mayans. There would, to me, clearly be persecution on account of a protected ground. Now, because in the government's view, the Petitioner hasn't shown, you know, sufficient evidence that he personally was persecuted, that — that makes him ineligible for asylum, even though it's pretty clear that as a group, these Mayans in Guatemala were persecuted. Well, the — I think that it's pretty clear from the record that Mayans disproportionately may have been associated with being pro-guerrilla, and that that was the underlying political opinion, if you were to say, or social group. And in this particular case, Petitioner has failed to establish that anybody imputed any political opinion onto him, that he was threatened or targeted in any way, that he suffered any particularized harm. He merely showed that he was caught up in a protracted civil war in Guatemala. Further, I would — Well, no, but it's more than just a civil war, because here it says the Commission confirmed that between 81 and 83, the Army identified groups of the Mayan population as the internal enemy, considering them to be the actual or potential support base for the guerrillas. In other words, they were the potential support base, right? And, you know, targeted them for elimination. I think that in this particular case, that we would look at the substantial evidence in whether a reasonable fact finder could conclude that he suffered past persecution. Reasonable minds may differ. You look at the record, but in this case, where the question is whether the evidence compels a finding of past persecution, he can point to a couple — The persecution of the Petitioner. Of the Petitioner. That's correct. As opposed to the group. That's correct. Well, even the group, I think it's — I don't know that there's compelling evidence to support that there was — I think that the evidence shows that there was a disproportionate number of Mayans who suffered or who were targeted during the Civil War. I'd further like to note that in this particular case, Petitioner has failed to establish a well-founded fear of future persecution, given the fact that his similarly situated family members reside in the home village in which he fled during the Civil War. His mother, who also, according to Petitioner's own testimony, left during the Civil War, has since returned to the village and is living without difficulty. And his brother, who is a Mayan — Yeah, but the problem of this is that if there really was past persecution, then the presumption of well-founded fear of future persecution arises, and the burden is on the government to rebut it. If there's no past persecution, then the burden is on the Petitioner to establish a well-founded fear of future. Correct. So — and this is a — if you say this is a close case, it may well depend on where the burden lies, and that depends on whether there was past persecution. Well, I don't necessarily think it's a close case. Oh, okay. All right. But I do think that even if there were a past persecution, the government, based on the record, there's a substantial evidence to support that he no longer has a well-founded fear of future persecution. The Petitioner relied on a case, Rolos, I think, to support his assertion that similarly situated family members don't rebut a presumption. But in that case, there was no testimony as to whether they were similarly situated. In this case, it's quite clear that his family members, who are now living back in Guatemala without difficulty, are similarly situated. Therefore, I think that the substantial evidence supports the finding that Petitioner failed to establish eligibility for asylum and withholding of removal. Thank you. Okay. Thank you. Rubal? Just very, very, very briefly, Your Honors. First of all, again, I want to emphasize the fact that we are not talking here about somebody simply who was in the way of a civil war. We are talking about an active program of the government to kill large numbers of people simply on the basis of their ethnicity. Let me ask you, let me ask you to address what seems to me to be the government's, the critical issue that the government raises. Well, even though there is this, you know, this documentary evidence about about persecution against Mayans or certain, you know, subgroups of Mayans by the government or by the army, the petition has to show something about persecution that he suffered personally and substantial evidence supports the IJ's determination that there's no persecution. Of the petition, as opposed to of the group. Yeah. I think that's a core issue in the case. I think the evidence, it does compel the conclusion that the petitioner individually suffered persecution. We're talking about an army here that has come to this village. Tell us what the persecution is. And I will. But it's a story. It's not just a fact. It's a story. And the story is that the army has come to the village. The army is massacring people, is killing women and children, killing old men, killing young men, killing people at random, has taken their bodies into the center of the town and cut them up with machetes. And the army is making its way down the road. And in the face of this, this man gets up and leaves his home. He travels to Mexico where he spends the rest of his adult life. He gives up the entire life that he knew. Now, if that is not individualized persecution, if that is not individualized impact on that person's life, he may not have lost his life, but his life was effectively taken away from him. And that's individualized persecution. Didn't we have a case like this where we talked about the Jews in Europe, that they didn't have to be the one who was actually. That's the case I mentioned earlier. OK. And I'm out of time. So unless you have further questions. Thank you very much. All right. Thank you. We thank both counsel. This case is submitted for decision. Next case on the calendar is United States versus Harrison.
judges: Thompson, Tashima, Rawlinson